# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

**ALPHA ALPHA CHAPTER OF**    :   **Case No. _____**
**ZETA BETA TAU FRATERNITY**    :
900 David Ross Road    :   **Judge/Magistrate _____**
West Lafayette, IN 47906    :
    :
AND    :
    :
**JASON BODZY**    :
900 David Ross Road    :
West Lafayette, IN 47906    :
    :
AND    :
    :
**BEN RIGGINS**    :
900 David Ross Road    :
West Lafayette, IN 47906    :
    :
AND    :
    :
**KYLE LINK**    :
900 David Ross Road    :
West Lafayette, IN 47906    :
    :
AND    :   **VERIFIED COMPLAINT**
    :
**KIEFER EARL**    :
900 David Ross Road    :
West Lafayette, IN 47906    :
    :
AND    :
    :
**CONNER FALK**    :
900 David Ross Road    :
West Lafayette, IN 47906    :
    :
AND    :
    :
**ALPHA ALPHA CHAPTER OF ZBT,**    :
**INC.**    :
444 Lake Cook Road    :
Suite 11    :
Deerfield, IL 60015    :
    :
         **Plaintiffs,**    :

v.                                          :
                                            :
**BRANDON CUTLER**                          :
IN HIS OFFICIAL AND INDIVIDUAL              :
CAPACITY                                    :
Krach Leadership Center, Room 229           :
1198 Third Street                           :
West Lafayette, IN 47906                    :
                                            :
AND                                         :
                                            :
**PURDUE UNIVERSITY**                       :
c/o The Office of the Board of Trustees     :
Hovde Hall of Administration, Room 247      :
610 Purdue Mall                             :
West Lafayette, IN 47907                    :
                                            :
AND                                         :
                                            :
**ABIGAIL LYNN HOWARD**                     :
IN HER OFFICIAL AND INDIVIDUAL              :
CAPACITY                                    :
Krach Leadership Center, Room 229           :
1198 Third Street                           :
West Lafayette, IN 47906                    :
                                            :
AND                                         :
                                            :
**JEFFERY P. STEFANCIC**                    :
IN HIS OFFICIAL AND INDIVIDUAL              :
CAPACITY                                    :
Office of Student Rights and Responsibilities :
Helen B. Schleman Hall, Room 216            :
656 Oval Drive                              :
West Lafayette, IN 47907                    :
                                            :
AND                                         :
                                            :
**MARGARET M. REISDORF**                    :
IN HER OFFICIAL AND INDIVIDUAL              :
CAPACITY                                    :
Office of Student Rights and Responsibilities :
Helen B. Schleman Hall, Room 216            :
656 Oval Drive                              :
West Lafayette, IN 47907-2086               :
                                            :
AND                                         :
                                            :

2

| | |
|---|---|
| **AMANDA PALMER** | : |
| IN HER OFFICIAL AND INDIVIDUAL | : |
| CAPACITY | : |
| Office of Student Rights and Responsibilities | : |
| Helen B. Schleman Hall, Room 216 | : |
| 656 Oval Drive | : |
| West Lafayette, IN 47907 | : |
| | : |
| AND | : |
| | : |
| | : |
| **DR. KATHERINE L. SERMERSHEIM** | : |
| IN HER OFFICIAL AND INDIVIDUAL | : |
| CAPACITY | : |
| Seng Liang Wang Hall, Fourth Floor | : |
| 516 Northwestern Avenue | : |
| West Lafayette, IN 47906 | : |
| | : |
| AND | : |
| | : |
| | : |
| **BETH MCCUSKEY** | : |
| IN HER OFFICIAL AND INDIVIDUAL | : |
| CAPACITY | : |
| Seng Liang Wang Hall, Fourth Floor | : |
| 516 Northwestern Avenue | : |
| West Lafayette, IN 47906 | : |
| | : |

PLEASE ALSO SERVE:
**STEVEN R. SCHULTZ**
Purdue University General Counsel
Hovde Hall of Administration
610 Purdue Mall
West Lafayette, IN 47907

**Defendants.**

COME NOW the Plaintiffs, the Alpha Alpha Chapter of Zeta Beta Tau Fraternity, Jason Bodzy, Ben Riggins, Kyle Link, Kiefer Earl, Conner Falk, and the Alpha Alpha Chapter of ZBT, Inc. (collectively, the "Plaintiffs"), and state the following for their Complaint against the Defendants:

### Introduction

This action is brought seeking remedies for breach of contract, as well as violations of the rights to freedom of association and speech under the First Amendment, and to due process and equal

protection under the Fourteenth Amendment to the U.S. Constitution, as also recognized under the Indiana Constitution.

**Jurisdiction & Venue**

1.  Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 (constitutional jurisdiction) and 28 U.S.C. § 1367 (state law supplemental jurisdiction).

2.  Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) in that the facts giving rise to Plaintiffs' claims occurred in this district and division, and the parties either reside or maintain a principal place of business in this district and division.

**Plaintiffs**

3.  The Alpha Alpha Chapter of Zeta Beta Tau Fraternity (the "Chapter") is an Indiana unincorporated association, capable of filing suit pursuant to Rule 17 of the Indiana Rules of Trial Procedure, which has 150 members, all of whom are current students at Purdue University ("Purdue" or the "University").

4.  The Chapter operates from its house located at 900 David Ross Road, West Lafayette, Indiana 47906 (the "Chapter House"), which it leases from the Alpha Alpha Chapter of ZBT, Inc. (the "House Corporation"), and in which ninety-five (95) members of the Chapter live.

5.  The Alpha Alpha Chapter of ZBT, Inc. (the "House Corporation") is an Indiana not-for-profit corporation that leases the Chapter House to the Chapter.

6.  To continue to financially comply with its contract with the House Corporation, the Chapter must recruit approximately fifty (50) new members per year.

7.  Each year, the Chapter expects to add about fifty (50) new members, the majority of whom are added as a result of the Chapter's participation in Purdue University's normal fall recruitment period.

8.  Jason Bodzy is a student at Purdue University, serves as the current President of the Chapter, and resides in the Chapter House.

9.  Ben Riggins is a student at Purdue University, serves as the Chapter's Director of Operations, and resides in the Chapter House.

10. Kyle Link is a student at Purdue University, serves as the Chapter's Recruitment Director, and resides in the Chapter House.

11. Kiefer Earl is a student at Purdue University, serves as the Chapter's Programming Director, and resides in the Chapter House.

12. Conner Falk is a student at Purdue University and serves as the Chapter's Director of Finance.

### Defendants

13. Purdue University is a public university of the State of Indiana, and as such, its action and those of its officials undertaken on behalf of the University constitute state actions.

14. Defendant Brandon Cutler is Purdue University's Associate Dean of Students and Director of Fraternity, Sorority, and Cooperative Life ("FSCL"), which oversees—among other student groups—fraternities that are members of the Purdue Interfraternity Council (the "IFC"), including the Alpha Alpha Chapter of Zeta Beta Tau. Mr. Cutler plays a dominant role in the disciplinary processes and decisions impacting Plaintiffs. Mr. Cutler was present and took part in the April 12, 2023, hearing described below involving the Chapter (the "April 12th Hearing"), including in the deliberations that found responsibility and imposed penalties against the Chapter. He is named in his individual and official capacity.

15. Purdue's FSCL office shares responsibility for the discipline and conduct process concerning fraternities with Purdue's Office of Student Rights and Responsibilities (OSRR). Together, the two offices make decisions regarding what matters may be heard—under the direction of FSCL— by the IFC's Fraternity Judicial Board (the "IFC Judicial Board" or the "Board"), as well as what

5

matters involving fraternities may be heard by a Community Standards Board, which is overseen by the OSRR. The OSRR conducts investigations on disciplinary matters, the results of which are then presented to the IFC Judicial Board when the adjudication authority is delegated to that Board.

16. Abigail Lynn Howard is the Associate Director of Fraternity, Sorority, and Cooperative Life at Purdue University. She was present and took part in the same April 12th Hearing. She was recently named by Purdue as the primary advisor to the IFC. She is named in her individual and official capacity.

17. Jeffery P. Stefancic is the Associate Dean of Students and Director of the OSRR and, in collaboration with Brandon Cutler and others, determines what matters are assigned to the Interfraternity Council's ("IFC") Fraternal Judicial Board and, based on information and belief, approved the Investigation Report prepared by his staff and presented at the April 12, 2023, hearing described herein.   He is named in his individual and official capacity.

18. Margaret M. Reisdorf is the Associate Director of the OSRR and, upon information and belief, was responsible for denying Chapter representatives the ability to see evidence relied on in issuing the Cease and Desist directive dated April 25, 2023, described herein. She is named in her individual and official capacity.

19. Amanda Palmer is a Student Affairs Specialist in the OSRR. Based upon information and belief, she interviewed witnesses whose identities were kept secret, but never interviewed any members of the Chapter, and prepared the Investigative Report that was presented at the April 12th Hearing, as described herein. She is named in her individual and official capacity.

20. Dr. Katherine L. Sermersheim is the Dean of Students, the individual to whom both the OSRR and FSCL offices report, and who exercises review and control over disciplinary decisions. She is named in her individual and official capacity.

21. Beth McCuskey is the Vice Provost for Student Life, the individual to whom Dr. Sermersheim reports, and the person ultimately in charge of ensuring that the policies of Purdue University regarding student conduct and discipline are properly enforced. She is named in her individual and official capacity.

22. Each of the Defendants identified in Paragraphs 15 through 22 above are officials of Purdue University, and thus their conduct constitutes state action. By agreement between Plaintiff's Counsel and Steven R. Schultz, Purdue University General Counsel ("General Counsel"), that Plaintiff will send summons for each individual defendant to General Counsel. General Counsel will accept service for each individual defendant listed in the complaint.

### First Cause of Action
### [42 U.S.C § 1983: Civil Rights Violations]

23. The allegations of the preceding paragraphs are incorporated herein by reference.

24. Purdue and its officials are state actors subject to 42 U.S.C. § 1983.

25. Purdue enacts numerous regulations regarding student conduct and discipline pursuant to the power and authority conferred by the laws of the state of Indiana.

26. Purdue pledges in its Purdue University Bill of Student Rights that:

> Every student and recognized student organization has the right to substantive and procedural fair play in the administration of discipline and the imposition of academic sanctions. This requires that in all situations the student be informed of the nature of the charges, that the student be given an opportunity to refute them and that the institution not be arbitrary in its actions.

27. In its dealings with students and student organizations, Purdue and its officials are obligated to provide the due process and equal protection rights provided for in the Fourteenth Amendment to the U.S. Constitution.

28. The Chapter is a recognized student organization of Purdue University.

29. Purdue mandates that all chapters and colonies of a North American Interfraternity Conference ("NIC") member organization hold membership in the Purdue IFC.

30. Because the national Zeta Beta Tau Fraternity is a member of the NIC, Purdue requires the Alpha Alpha Chapter to be a member of the IFC at Purdue.

31. Purdue's OSRR publishes regulations concerning the University's conduct process that includes "certain substantial and procedural rights" such as:

   A. The right to be informed in writing of all charges.
   B. The right to be fairly informed of the reported circumstances of any alleged violation.
   C. The right to a fair conduct conference.
   D. The right to be informed of the names and addresses of witnesses known to OSRR.
   E. The right to appeal.

32. The University reserves the right to assign certain disciplinary matters to the IFC Fraternal Judicial Board to handle the conduct conference hearing, but only if the OSRR grants the IFC Judicial Board jurisdiction over the incident.

33. Upon information and belief, the IFC Fraternal Judicial Board Bylaws have been approved by Purdue University officials.

34. The IFC Fraternal Judicial Board Bylaws guarantee, among other things, that witnesses may be called in for questioning and will be examined and cross examined by each party during judicial proceedings, including disciplinary hearings.

35. Serious sanctions may only be imposed on a fraternal member group by the IFC's Fraternal Judicial Board with the approval of either Purdue's Dean of Students or a designee of the Dean of Students.

36. If the Dean of Students (or designee) does not agree with the sanctions proposed by the IFC Judicial Board, the Board must reconsider them.

37. If the Dean of Students (or designee) and the Chief Justice of the IFC Judicial Board cannot agree on sanctions, Purdue's Vice Provost for Student Life (or her designee) makes the final decision in fraternal disciplinary proceedings.

*Violations Related to April 12, 2023, Decision and Sanctions.*

38. The Chapter hosted a registered function at its Chapter House on January 27, 2023.

39. Prior to and during the registered function, the Chapter complied with all rules and policies, including Purdue's established Safety and Risk Management Authority (SARMA) Procedures.

40. During the January 27th function, and in accordance with the established SARMA Procedures, two separate inspections of the Chapter House and the function itself were conducted by members of the IFC. As noted in the official forms completed for each of the two visits, no violations or other concerns were identified as a result of either of the two random SARMA inspections.

41. At some point after the second SARMA inspection, a different IFC representative—who had not been present during either of the two SARMA inspections—altered the Chapter's SARMA reports to improperly suggest the Chapter had not met all SARMA requirements.

42. Consequently, the Chapter was notified that the University was investigating the Chapter for various alleged violations, including having hard alcohol present, related to the January 27th function.

43. Despite repeated efforts by Chapter representatives to obtain information and/or review the evidence in the University's possession during that investigation, Purdue refused to provide such information to the Chapter.

44. The University proceeded with charging the Chapter with multiple violations despite never speaking with or otherwise interviewing a single member of the Chapter.

45. The Chapter was denied the right in advance of the hearing to obtain copies of any documents, including investigation reports, which would be used against the Chapter at the hearing.

46. While Chapter representatives were allowed to look at some documents, they could not electronically copy or photograph them.

47. The Chapter and its members could not obtain effective legal advice prior to or during the hearing on the import of the "evidence," as the complete evidence could not be shared with the Chapter's counsel.

48. The Chapter was denied the right to have an attorney in the hearing, even to advise the Chapter officers who were allowed to speak.

49. No witnesses to the alleged violation were ever identified to the Chapter, either before or during the hearing.

50. Based on information and belief, the Investigation Report was prepared by an official or officials, including Amanda Palmer, in the OSRR; was approved by Jeffery Stefancic; and was approved to be presented to the IFC Fraternal Judicial Board by Brandon Cutler and Abigail Lynn Howard.

51. The University redacted all names and other identifying information from the Investigation Report, despite the University's guarantee that students have a right to be informed of the names and addresses of witnesses known to the OSRR.

52. The Investigation Report contains incomplete, misleading, and inaccurate information, as it did not name any witnesses, contain any first-party reports, or provide any specific facts that justified a finding of responsibility for any of the allegations against the Chapter.

53. Purdue granted jurisdiction to the Purdue IFC Fraternal Judicial Board to handle the Chapter's conduct conference.

54. A disciplinary hearing before the IFC Judicial Board was scheduled to occur on April 12, 2023, and did occur on that same date.

55. Pursuant to Article VIII, Section C of the IFC Judicial Board's Bylaws, attendance at IFC Judicial Board hearings is limited to *only* the IFC Prosecutor, IFC Chief Justice, assigned IFC Justices, IFC Clerk, and University's Director of Fraternity, Sorority, and Cooperative Life, the president of the

accused fraternal group, one additional undergraduate member of the accused fraternal group, and one chapter advisor; no others are permitted to attend the hearings.

56. Despite the limitation on who may attend the IFC Judicial Board hearings as set forth in the IFC Judicial Board Bylaws, Abigail Lynn Howard attended the April 12th Hearing.

57. During the April 12th Hearing, the IFC's Chief Justice, with the approval of Brandon Cutler, made a phone call to an officer of the IFC, who acknowledged that he received and then altered the SARMA reports sometime after the January 27th function to allege violations against the Chapter.

58. Even knowing the SARMA Report(s) were altered, Brandon Cutler allowed the fabricated evidence to form part of the basis of the hearing decision.

59. Neither that IFC Officer, who had not personally attended the January 27th function at the Chapter House, nor anyone else who spoke on behalf of the University at the April 12th Hearing could name any witness who observed any of the alleged violations of which the Chapter was accused, nor could anyone provide specific factual details to support any such allegations.

60. Brandon Cutler was present at the hearing, advised the IFC Judicial Board, and, based on information and belief, joined the Board in its deliberations from which the Chapter and its representatives were excluded, and influenced the decision and penalty imposed.

61. The only "testimony" against the chapter at the April 12th Hearing was the reading of the redacted Investigation Report by the IFC "Prosecutor."

62. The Prosecutor was not a witness (and was never identified prior the Hearing as being a witness), he had not conducted an independent verification of the information included in the Investigation Report, and his reading of a report prepared by someone else is not evidence, nor is it sufficient to warrant a finding of responsibility.

63. Since no witnesses were presented by the Prosecutor or anyone else on behalf of the University who actually saw any alleged violations, the Chapter was deprived of the ability to cross examine

11

witnesses whose statements, as set forth in the (redacted) written Investigation Report, formed the entirety of the allegations made against the Chapter.

64. The Chapter was denied the right to record the hearing, even though the University was permitted to do so using University equipment.

65. Various officials of the University and members of the IFC Judicial Board, who were acting on behalf of the University, failed upon request to provide either a transcript or recording of the April 12th Hearing to the Chapter to assist in its appeal.

66. The failure of the University to provide either a recording or transcript of the hearing continues to this day.

67. Any and all evidence presented during the April 12th Hearing, including the Investigative Report, the Chapter was allowed to review during the hearing was collected by the IFC at the conclusion of the hearing, thereby preventing the Chapter from referencing such materials to prepare their appeal.

68. In the absence of being able to share evidence in advance with legal counsel and secure appropriate advice and guidance in evaluating such, or even to obtain a physical copy of the "evidence," the Chapter was deprived of Purdue's promised right that accused parties will be fairly informed of the charges and the circumstances giving rise to those charges.

69. As a result of not revealing names of witnesses or calling witnesses to prove the case against the Chapter, the Chapter and its members were deprived of due process, including the right to confront and cross examine witnesses, as had been promised in the written process approved by the University and which governed the hearing.

70. The failure to timely provide a transcript or recording of the hearing and the failure to provide a clear process for appeal of a decision made by the IFC Judicial Board—but controlled by the

University—deprived the Chapter and its members from a meaningful right to appeal, as had been promised in University OSRR published documents governing conduct appeals.

71. The decision of the April 12th Hearing constituted a breach of contract and was an unconstitutional violation of the civil rights of the Chapter and its members as it was made in deprivation of the due process and equal protection rights of the Chapter and its members.

72. The punishment imposed upon the Chapter from the April 12th Hearing included fines and limitations on the Chapter's ability to engage in regular social events (the "Sanctions").

73. The punishment imposed on the Chapter from the April 12th Hearing constitutes a prior restraint on the Chapter's associational rights.

74. The Sanctions were imposed based on a hearing that had no support for the decision, no witnesses to support the finding of a violation, was fundamentally unfair, and constituted an unconstitutional violation of the liberty and property interests of the Chapter and its members.

75. The Chapter appealed the IFC Judicial Board's decision.

76. The Chapter's lengthy and thorough appeal pointed out numerous procedural errors and issues in the investigation and hearing, as well as why the sanctions imposed were grossly disproportionate.

77. Because the Chapter was deprived of a recording of the April 12th Hearing, the Chapter was unable to include as part of its appeal references to critical information, including specific factual discrepancies, that had been presented by the Prosecutor and/or University in support of the alleged violations.

78. Purdue's IFC Executive Board reviewed the appeal and upheld the finding of responsibility and the sanctions imposed.

79. The appeal decision addressed only the "grossly disproportionate" portion of the Chapter's appeal, but ignored all procedural defect arguments raised in the appeal request.

80. The Chapter's appeal request put Purdue on notice that Purdue had deprived the Chapter and its members of constitutional rights by failing to provide procedural due process in the University's investigation and adjudication of the disciplinary proceedings against the Chapter.

81. Despite being put on notice of Purdue's disregard for procedural due process rights, Purdue proceeded to continue to engage in such violations shortly thereafter by issuing a Cease and Desist letter without any proper grounds for doing so.

82. Following the April 12th Hearing and the decision that resulted from it, Purdue's Office of Fraternity, Sorority, and Cooperative Life, under the direction of Brandon Cutler, posted on its University website a ranking of the Chapter, erroneously listing it as having a Level 3 Conduct reporting, when even considering the unconstitutional decision and imposition of sanctions, only a Level 2 conduct ranking was supportable under the University's published standards for such rankings.

83. Improperly reporting the Chapter as having more serious sanctions impairs and discourages the recruitment of new members by the Chapter.

84. Defendants Cutler, Howard, Stefancic, Reisdorf, Palmer, Sermersheim, and McCuskey each knew about the University's and/or IFC Judicial Board's misconduct and facilitated, approved, condoned, or otherwise turned a blind eye to it.

*Violations Related to Cease and Desist Order of April 25, 2023*

85. Article XIII, Section A of the IFC Judicial Board's Bylaws provide that the IFC President can "suspend any and all member fraternity activities, events, or functions, up to and including a full issuance of a cease and desist, for a reasonable, but potentially indefinite, amount of time."

86. However, Article XIII, Section B of the IFC Judicial Board's Bylaws limit the grounds pursuant to which such an interim suspension may be imposed upon a fraternal group. Specifically, the

Bylaws clearly state that "there must be some extenuating circumstance(s) that would require the IFC President to suspend any member fraternity activity including, but not limited to:

    a. It is deemed that the member fraternity continuing activities would put its members at significant physical, mental, or emotional risk (hereinafter, the "Harm to Members Concern")

    b. A Purdue University, IFC, or other investigation of the member fraternity is underway and it is deemed that the chapter continuing operation would hinder such investigation (hereinafter, the "Investigation Interference Concern")

    c. The member fraternity is non-compliant on regulations and requires more immediate action than the ordinary judicial process (hereinafter, the "Fraternity Non-Compliance Concern").

87. Based upon information and belief, the requirements for issuing a cease and desist order to a fraternal organization were approved by Purdue officials.

88. On April 25, 2023, the Chapter was advised in writing that all the Chapter's social events and activities were placed on immediate cease and desist under authority claimed by the Purdue IFC (the "Cease and Desist").

89. The Cease and Desist did not include a termination date, and instead applies indefinitely.

90. The Cease and Desist does not define "social events and activities," making it unclear what conduct or affairs are prohibited pursuant to the directive.

91. In light of the ambiguous and unclear nature of the Cease and Desist, it is void for vagueness.

92. As a social fraternity, any restriction on the Chapter's ability to engage in social events or activities directly impacts the Chapter's ability to exist and operate.

93. The Cease and Desist's prohibition against the Chapter's ability to engage in any social events or activities, and requirement that either a representative of the National Fraternity or the Chapter's Advisor be present for any new member activities and recruitment, constitutes a prior restraint on the Chapter's associational rights.

94. The Cease and Desist's requirement that the Chapter contact the Purdue IFC Executive Committee to obtain prior approval for (undefined) meetings constitutes a prior restraint on the Chapter's associational rights.

95. Although the Cease and Desist states that certain events may continue, including executive board and Chapter meetings, it does not provide approval for philanthropic or community service events or activities. Such activities are social in nature and are prohibited by the vague and overly broad Cease and Desist.

96. Philanthropic and community service events are a critically important part of the activities of the Chapter. Each year it engages in numerous community service projects, including College Mentors for Kids, campus cleanup efforts, assisting local residents in yard clean up and winterization efforts, and last year, spent two day packing relief supplies for Ukraine. Philanthropic efforts last year alone raised more than $22,000 for a variety of causes, including Riley's Children's Hospital, the Alzheimer's Association, and Natalie's Second Chance No-Kill Animal Shelter.

97. Based on information and belief, the Cease and Desist had been approved by Brandon Cutler and one or more of the named individual Purdue Defendants.

98. A copy of that Cease and Desist directive, which was made without notice or hearing to the Chapter, is attached as **Exhibit A**.

99. The Cease and Desist provides no details as to why this action was taken.

100. The Cease and Desist fails to document, as required by the IFC Judicial Board's Bylaws, what exigent circumstances exist to warrant the immediate suspension of the Chapter's activities.

101. The Cease and Desist is devoid of any suggestion of a Harm to Members, Investigation Interference, or Fraternity Non-Compliance Concern created by the Chapter.

102. Representatives of the Chapter have sought information and the ability to review any documentation upon which caused the Cease and Desist letter to be issued, but the Chapter has

been denied such information, and the University, by and through Defendant Margaret Reisdorf, has refused to provide the Chapter with access to any evidence, even if only to see without copying such evidence, that relates to the issuance of the Cease and Desist.

103.    Representatives of the Chapter have also sought information regarding who the witnesses are to any claimed violations which were the cause of Cease and Desist order to be issued, but the ability to review, even if only to see without copying, such information was prohibited by Defendant Margaret Reisdorf.

104.    Representatives of the Chapter have sought to determine when a hearing will be held on the unidentified charges, but have not received a response.

105.    As of the date of the filing of this Complaint, almost four (4) months have passed since the Cease and Desist was issued, during which time the Chapter and its members have been unable to freely enjoy their constitutional rights, despite Purdue not providing to the Chapter either adequate notice or an opportunity to be heard.

106.    The issuance of the Cease and Desist order and its threatened enforcement with additional sanctions are violations of the constitutional rights of the Chapter and its members, which deprives them of due process and freedom of association rights.

107.    Defendants Cutler, Howard, Stefancic, Reisdorf, Palmer, Sermersheim, and McCuskey each knew about the University's and/or IFC Judicial Board's misconduct and facilitated, approved, condoned, or otherwise turned a blind eye to it.

108.    The Chapter and its members intend to continue operating at the University, but they face real and immediate threats that Purdue will again proceed with an investigation and IFC Judicial Board hearing devoid of procedural due process protections.

109.    Without court intervention, any future hearing conducted regarding the unidentified alleged violations will be conducted utilizing the same violations of rights that were employed during—

and leading up to—the April 12th Hearing and with regard to an appeal from the results of that Hearing.

110.    The Chapter's and its members' First Amendment freedom of association rights, along with their Fourteenth Amendment due process rights, are clearly established constitutional rights of which a reasonable person would have known, especially in light of the Seventh Circuit Court of Appeals' decision in *Doe v. Purdue*, 918 F.3d 652 (2019).

111.    Dr. Sermersheim, the individual to whom both the OSRR and FSCL officers report and who exercises review and control over disciplinary decisions, is particularly well aware of these clearly established rights, as Dr. Sermersheim was specifically named as a defendant and found to have violated such rights by virtue of participating in a fundamentally unfair pursuit of an accused student in the 2019 *Doe v. Purdue* case.

112.    In depriving the Chapter and its members of their constitutional rights, Purdue and its officials who are defendants herein have violated—and remain in violation of—42 USC § 1983.

113.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages.

114.    The actions of Defendants were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in a conscious disregard of, the harm that would be inflicted upon Plaintiffs. Consequently, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from similar conduct.

115.    Plaintiffs were forced to hire attorneys to represent them in this matter and Plaintiffs should be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## Second Cause of Action
### [Civil Rights Violations – Indiana Constitution]

116.    The allegations of the preceding paragraphs are incorporated herein by reference.

117.    Defendants deprived Plaintiffs of due process of law as secured by Article I, Section 12, of the Indiana Constitution in the manner in which the investigation and adjudication of the allegations against the Chapter related to the January 27th function.

118.    Defendants deprived Plaintiffs of due process of law as secured by Article I, Section 12, of the Indiana Constitution in the manner in which the decision to issue, and keep in place, the April 25, 2023, Cease and Desist directive.

119.    Plaintiffs were entitled, at a minimum, proper notice and a fair opportunity to be heard before any sanctions or limitations on their actions or operations was imposed by Defendants.

120.    Defendants acted in concert to deprive Plaintiffs of their constitutional rights, and Defendants knew or should have known that their conduct violated Plaintiffs' clearly established constitutional rights.

121.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages.

122.    The actions of Defendants were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in a conscious disregard of, the harm that would be inflicted upon Plaintiffs. Consequently, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from similar conduct.

123.    Plaintiffs were forced to hire attorneys to represent them in this matter and Plaintiffs should be awarded reasonable attorney's fees and costs.

### Third Cause of Action
### [42 U.S.C § 1983: Violations Related to Equal Protection Rights]

124.    The allegations of the preceding paragraphs are incorporated herein by reference.

125.    Because Purdue's regulations require the Chapter to belong to the IFC, the Chapter will likely be required to face future hearings by the IFC Fraternal Judicial Board such as that described above.

19

126.    Other student organizations are not similarly required to only be heard by the IFC Fraternal Judicial Board when facing organizational misconduct allegations. Instead, other student organizations are permitted to defend against allegations before the Community Standards Board.

127.    The Community Standards Board process has greater protections or the accused group, including appeal rights.

128.    Requiring the Chapter to belong to the IFC and face disciplinary hearings only before the IFC Fraternal Judicial Board is a violation of the Chapter's and its members' equal protection and freedom of association rights.

129.    As a direct and proximate result of the actions described above, Plaintiffs sustained actual damages.

130.    The actions of Defendants were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in a conscious disregard of, the harm that would be inflicted upon Plaintiffs. Consequently, Plaintiffs are entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from similar conduct.

131.    Plaintiffs were forced to hire attorneys to represent them in this matter and Plaintiffs should be awarded reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Fourth Cause of Action**
**[Violation of Indiana's Public Records Law]**

132.    The allegations of the preceding paragraphs are incorporated herein by reference.

133.    Upon request made to a representative of the IFC Fraternal Judicial Board for a recording of the April 12th Hearing, the Chapter was directed to Brandon Cutler.

134.    In response, Cutler offered no assistance and claimed not to have the recording.

135.    Pursuant to Indiana's Access to Public Records Act, Ind. Code 5-14-3, Plaintiffs' counsel made a formal records request to Purdue for a copy of the transcript, and later, (alternatively) for the recording of the April 12th Hearing, on April 24, 2023, and May 4, 2023.

136.     Purdue responded to the April 24, 2023, request by informing Plaintiffs' counsel that a transcript of the April 12th Hearing did not exist.

137.     Kaity Heide, Purdue's Legal Services Coordinator responsible for fulfilling requests for public records, recently informed Plaintiffs' counsel that the recording is in possession of the IFC and it could only be obtained sometime after students returned to campus for the fall semester.

138.     In failing to provide the recording or transcript of the April 12th Hearing in a timely manner and continuing to not provide it, Purdue and its officials, including specifically Brandon Cutler, are in violation of Indiana's Public Records Law.

### Fifth Cause of Action
### [Violation of Property Rights]

139.     The allegations of the preceding paragraphs are incorporated herein by reference.

140.     The House Corporation leases its rights in the Chapter House to the Chapter which, in turn, provides housing for approximately ninety-five (95) student members of the Chapter.

141.     The annual budget of the House Corporation to maintain the house and provide services to the Chapter and its live-in members is approximately $1,000,000.

142.     The threat made in the April 25th Cease and Desist letter to call into question the standing of the Chapter at Purdue directly threatens to interfere with the contractual rights of the students to live in the Chapter House.

143.     The Cease and Desist letter also threatens to interfere in the contractual rights of the Chapter and House Corporation and with the due process of law.

### Sixth Cause of Action
### [Breach of Contract]

144.     The allegations of the preceding paragraphs are incorporated herein by reference.

145.     The various documents that the University and its officials who are defendants herein have published and posted on the University's website are a part of the contract between the University, its students, and its recognized student organizations.

146.    The University and its officials who are defendants herein failed to ensure the University's investigation and adjudication of the allegations related to the January 27th function complied with Purdue's promulgated policies and procedures, thereby breaching the contract with the Chapter and its individual members.

147.    For example, Purdue breached its contract with the Chapter and its individual members by failing to: properly inform the Chapter in a meaningful way of the charges or the facts giving rise to the alleged violations; provide the names and addresses of witnesses against the Chapter; completing a fair conduct conference including the ability to cross examine witnesses and the avoidance of surprise witnesses/evidence; and not timely providing a record of the hearing for the purpose of preparing a meaningful appeal.

148.    By issuing a Cease and Desist directive without identifying any exigent circumstances that would justify such interim action, despite the IFC Judicial Board's Bylaws limiting the availability of such interim measures to situations involving threatened harm or jeopardization of safety, Purdue and its individual officials have breached its contract with the Chapter and its members.

149.    By denying the Chapter and its member access to the evidence upon which the Cease and Desist order was supposedly issued, and by also threatening to oversee the conduct of an as yet unscheduled hearing in a manner similar to the how the April 12th Hearing was conducted, the University and its officials are in breach of Purdue's contract with the Chapter and its students who are members of the Chapter.

150.    As a direct and proximate result of each and all of the aforementioned conduct, Plaintiffs have been significantly damaged, entitling Plaintiffs to an injunction enjoining Defendants from breaching Purdue's contractual agreement with Plaintiffs and from interfering with Plaintiffs' established constitutional rights in the process of investigating and adjudicating allegations of

22

student organization misconduct, along with their attorney's fees, expenses, costs, and disbursements.

**Request for Relief**

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in combination and/or individually, as follows:

A. Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from enforcing the sanctions associated with the April 12, 2023, hearing;

B. Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from the enforcing the Cease and Desist letter dated April 25, 2023;

C. Temporary, preliminary, and permanent injunctive relief prohibiting Defendants from proceeding with any disciplinary hearing involving the Chapter and/or its members without:

    1. Adequate notice and access to charges and evidence which may be used against them, including the ability to obtain copies of such evidence;

    2. The identification of witnesses who will testify against the Chapter and its members;

    3. The ability to have legal counsel provide guidance to the Chapter and its members;

    4. The ability to cross examine witnesses against the Chapter and its Members;

    5. The right to a fair and proper hearing; and

    6. The right to a meaningful appeal.

D. A temporary, preliminary, and permanent injunction requiring Defendants to remove from the disciplinary records of the Chapter the decision and sanctions imposed following the April 12, 2023, hearing;

23

E.  A temporary, preliminary, and permanent injunction requiring Defendants to comply with

Indiana's Access to Public Records Act by providing a copy of the April 12, 2023, hearing

recording to the Chapter;

F.  An award of costs and legal fees pursuant to 42 USC § 1988; and

G.  Such other relief as the Court may deem just and appropriate.

Respectfully submitted,

/s/ Timothy M. Burke
Timothy M. Burke (OH Bar No. 0009189)
Ilana L. Linder    (OH Bar. No. 0095622)
 *Pro Hac Vices Pending*
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Email: tburke@manleyburke.com
 ilana.linder@manleyburke.com

/s/ Laura L. Blaydes
Laura L. Blaydes (36773-49)
WITHERED BURNS, LLP
 427 Main Street, Suite 200
 P.O. Box 499
 Lafayette, Indiana 47902-0499
Phone: (765)742-1988
Email: lblaydes@witheredlaw.com

*Attorneys for Plaintiffs*

## VERIFICATION

I, Michael Shartiag, being first duly cautioned and sworn state as follows:

I am the senior advisor to the Alpha Alpha Chapter of Zeta Beta Tau at Purdue University, having been appointed to that position by the national Zeta Beta Tau Fraternity. In that capacity, I am in close contact with the leadership of the Chapter on a continuing basis.

I attended the April 12, 2023, hearing described in the foregoing Complaint. I have worked with the Chapter since it received the Cease and Desist letter on April 25, 2023. I am familiar with the various policies adopted or approved by Purdue University referenced in the Complaint.

I have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of my knowledge and belief.

_____
Michael Shartiag

_____
Date

# <u>EXHIBIT A</u>

 **PURDUE UNIVERSITY**
**INTERFRATERNITY**
**COUNCIL**

INTERFRATERNITY COUNCIL
*Executive Board*

April 25th, 2023                                    **PERSONAL AND CONFIDENTIAL**

Alpha Alpha Chapter of Zeta Beta Tau Fraternity
Sent electronically to presidentzbtaa@gmail.com

To Jason Bodzy, President of the Alpha Alpha Chapter of Zeta Beta Tau Fraternity,

This letter serves as the official notification of the decision made by the Interfraternity Council Executive Board to **place all chapter social events and activities on immediate cease and desist**. Any activities including chapter social events or any events with alcohol must be immediately and indefinitely suspended. Chapter operations including executive board and chapter meetings, new member activities and recruitment, and intramurals may still proceed. A chapter advisor or fraternity headquarters representative must be present at all new member activities and recruitment. Please contact the Purdue Interfraternity Council Executive Committee for approval for such meetings.

Based on risk management incidents at your chapter facility during the week of Grand Prix, the Purdue Interfraternity Council has decided to take action to mitigate any future incidents. Following the pending investigation, there will be a judicial board hearing to determine the ongoing status of your organization and its standing at Purdue University. In the meantime, the council expects that **all chapter social events and activities must be immediately and indefinitely suspended**.

Please reach out immediately if you need any clarification on the decision or its implications.

Sincerely,

Noah Berning
President, Purdue Interfraternity Council

CC:    Brandon Cutler, Assistant Dean of Students, Fraternity, Sorority, and Cooperative Life
       Abigail Howard, Associate Director, Fraternity, Sorority, and Cooperative Life
       Jeffery Stefancic, Associate Dean of Students, Office of Student Rights and Responsibilities
       Maggie Reisdorf, Senior Student Affairs Specialist, Office of Student Rights and Responsibilities
       Alex Hardin, Vice President of Administration, Purdue Interfraternity Council
       Leo Dagon, Vice President of Risk Management, Purdue Interfraternity Council
       Nick Medel, Vice President of Membership, Purdue Interfraternity Council
       Tash Medde-Witage, Vice President of Programming and Education, Purdue Interfraternity Council
       Andrew Eichmeier, Chief Justice, Purdue Fraternal Judicial Board